# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| JENIFER LYNE KNIGHTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-00792-P |
| | § | |
| THE UNIVERSITY OF TEXAS AT ARLINGTON et al. | § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Dawnetta Smith, Debra Woody, Eddie Freeman, Jean Hood, Vistasp Karbhari, Shelby Boseman (collectively, "Individual Defendants), and the University of Texas at Arlington's ("UTA," and together with the Individual Defendants, "Defendants") Motion for Reconsideration on Order Denying Motion to Dismiss and Brief and Support ("Motion for Reconsideration") (ECF No. 40) and Opposed Motion to Stay Proceedings and Brief in Support (ECF No. 41). Having considered the motions, briefing, applicable law, and all papers on file with the Court, including Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion to Dismiss") (ECF No. 32), the Court finds that Defendants' Motion for Reconsideration (ECF No. 40) should be and hereby is **GRANTED in part and DENIED in part**, and that Defendants' Opposed Motion to Stay Proceedings (ECF No. 41) should be and hereby is **DENIED.**

## BACKGROUND

Plaintiff Jenifer Lyne Knighton ("Plaintiff") is a *pro se* litigant asserting claims against UTA and several UTA employees in their individual and official capacities seeking "declaratory, injunctive, compensatory, punitive, and exemplary relief." Pl.'s 2nd Am. Compl., p. 1, ECF No. 31. Plaintiff claims that Defendants violated her constitutional rights and caused her financial, physical, and emotional injuries resulting from "sexual harassment, gender-discrimination, harassment, retaliation, attempted extortion, defamation and discrimination" while enrolled as a student in UTA's School of Social Work in 2018. *Id.* Plaintiff asserts thirteen causes of actions against Defendants, including: (1) Title IX gender discrimination (against UTA); (2) Title IX retaliation (against UTA); (3) Americans with Disabilities Act of 1990 ("ADA") violations (against UTA); (4) failure to respond and/or accommodate in violation of the Civil Rights Act (1964) (against UTA); (5) sexual harassment and gender discrimination in violation of the Civil Rights Act (1964) (against UTA); (6) negligent infliction of emotional distress (against Individual Defendants); (7) section 1983 equal protection violations (against Individual Defendants); (8) conspiracy against rights (against Individual Defendants); (9) section 1983 substantive due process violations (against Individual Defendants); (10) section 1983 14th Amendment due process violations (against Individual Defendants); (11) defamation per se (against Dawnetta Smith and Eddie Freeman); (12) breach of contract (against UTA); and (13) interference with a prospective business relationship (against Individual Defendants).

Defendants' Motion to Dismiss asks the Court to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule

12(b)(6) for failure to state a claim. ECF No. 32. In Defendants' brief supporting their Motion to Dismiss, Defendants state that "[the fact] section, and other sections following, include fact statements from Plaintiff's Original Complaint," and request the "Court to take judicial notice of the content of the record in this case, and that the facts from the Original Complaint are admissions by Plaintiff." Defs.' Brief in Supp. of Mot. to Dismiss, p. 7, n.2, ECF No. 33. After considering all responsive briefings related to the Motion to Dismiss, the Court declined to take judicial notice and deem the facts asserted in Plaintiff's Original Complaint as admissions by Plaintiff because (1) many of the facts remain in dispute, and (2) the excessive quantity of factual allegations that Defendants asked the Court to take judicial notice of did not comport with the principle that "a district court should only take judicial notice of facts *sparingly* at the pleading stage." Order Denying Mot. to Dismiss, pp. 4–5, ECF No. 39 (emphasis in original). The Court then denied Defendants' Motion to Dismiss on August 20, 2019. *Id*. at 5.

On August 30, 2019, Defendants filed their Motion for Reconsideration. ECF No. 40. Defendants seek reconsideration because "the Court did not address Defendants' substantive arguments" and because "Defendants' substantive arguments . . . were not dependent upon the Court taking judicial notice of [the facts from Plaintiff's Original Complaint.]" *Id*. at p. 3.[1] Defendants' Motion for Reconsideration is fully briefed and ripe for review.

---

[1] The Honorable U.S. District Judge Terry R. Means transferred this case to the docket of the undersigned on October 9, 2019. ECF No. 46.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 54(b) "allows parties to seek reconsideration of interlocutory orders and authorizes the district court to "revise[] at any time" "any order or other decision . . . [that] does not end the action." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (alterations in original) (quoting FED. R. CIV. P. 54(b)). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* (quotation marks omitted). "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear . . . [s]uch a motion requires the Court to determine whether reconsideration is necessary under the circumstances." *Dallas Cty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 950 (N.D. Tex. 2014) (quotation marks omitted).

"[T]he power to reconsider or modify interlocutory rulings [under Rule 54(b)] 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders [under Rule 59(e)]." *Austin*, 864 F.3d at 337 (quoting *Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011)). "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible [than Rule 59(e)], reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 336–37 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015)). Accordingly, in contrast to a Rule 59(e) motion, the district court may consider "new

arguments" in a Rule 54(b) motion that the movant did not raise in prior briefing. *See id.* at 337.

## ANALYSIS

In their Motion for Reconsideration, Defendants do not request reconsideration of the Court's decision to decline to judicially notice the facts asserted in Plaintiff's Original Complaint. Defs.' Mot. for Recon., pp. 3–6, ECF No. 40. Instead, Defendants only argue that their substantive arguments in support of dismissing Plaintiff's claims remain valid even in light of the Court's refusal to take judicial notice. *Id*. at pp. 3–4. The Court therefore declines to reconsider that portion of its Order concerning judicial notice of the facts asserted in Plaintiff's Original Complaint. ECF No. 39. However, upon reconsideration, the Court finds that some of the grounds for dismissal that Defendants argued in their Motion to Dismiss have merit notwithstanding this Court's prior order.[2] Applying the rubric of Rule 54(b), the Court considers Defendants' meritorious grounds for dismissal in turn.

**A.     The Individual Defendants are Entitled to Qualified Immunity.**

"The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). Even if a defendant's actions violated

---

[2]Because Plaintiff satisfied the pleading standards under Rule 12(b)(6) as to Counts I, II, IV, and V, the Court finds it appropriate to **DENY** Defendants' motion to dismiss for failure to state a claim with respect to Counts I, II, IV, and V. Similarly, Defendants' motion to dismiss Plaintiff's request for punitive damages is **DENIED** pending further development of the facts in this case.

a clearly established constitutional right, this Court must determine whether qualified immunity "is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Id*. (internal quotations omitted) (citing *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (citing *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable [official] could have believed his actions were proper." *Id*. (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Id*. (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

Plaintiff alleges the Individual Defendants unreasonably violated several of Plaintiff's clearly established constitutional rights. Pl.'s 2nd Am. Compl., pp. 25–33, 35–37. In their Motion to Dismiss, the Individual Defendants argued that they are entitled to qualified immunity from liability in their individual capacities because "even assuming that Plaintiff has alleged a constitutional right that was violated by the [I]ndividual Defendants' conduct, their conduct was not objectively unreasonable." Defs.' Brief in Supp. of Mot. to Dismiss, p. 23. To demonstrate that their conduct was reasonable under the circumstances, the Individual Defendants point to the following facts: (1) Defendants "heard [Plaintiff's] complaints and interviewed all graduate students and Dr. Jones"; (2) "investigated [Plaintiff's] allegations"; (3) "provided alternatives to completing the

courses, including withdrawing and having hours roll over"; (4) "reviewed Plaintiff's claims under [applicable organizational p]olicies and provided an appeals process"; and (5) refunded Plaintiff's tuition. *Id*. In response, Plaintiff argues that the Individual Defendants conduct was clearly unreasonable because (1) "the Individual Defendants did not interview Plaintiff"; (2) "an investigation never took place"; (3) "Plaintiff was wrongly disciplined for reporting sexual harassment and gender discrimination"; (4) the Individual Defendants acted and "continue[] to act with deliberate ignorance"; and (5) the Individual Defendants "provided no alternatives to completing the Spring course other than completing 145 hours in 4 weeks, fail, or withdraw." Pl.'s Brief in Resp. to Defs.' Mot. to Dismiss, p. 24., ECF No. 35.

After reviewing the arguments and evidence presented by the parties, the Court finds that the Individual Defendants conduct was not clearly unreasonable. Plaintiff fails to establish that the Individual Defendants were required to interview her, or that "an investigation never took place."[3] *See id*. Further, Plaintiff otherwise offers only conclusory legal arguments to support her position. Accordingly, the Individual Defendants are entitled to qualified immunity from liability in their individual capacities.

The Court therefore **GRANTS** Defendants' Motion to Reconsider, and Counts VI,[4] VII, VIII, IX, X, XI, and XIII are **DISMISSED** as to the Individual Defendants in their individual capacities.

---

[3]Indeed, Plaintiff alleged the opposite in the fact section of her live pleading. Pl.'s 2nd Am. Compl., pp. 14-16.

[4]Count VI of Plaintiff's Second Amended Complaint asserts a claim for negligent infliction of emotional distress against the Individual Defendants in their individual capacities. Pl.'s 2nd Am. Compl.,

**B. Eleventh Amendment Immunity Deprives This Court of Subject Matter Jurisdiction as to Counts III (Violations of the ADA), VII (§ 1983 Equal Protection Violations), VIII (Conspiracy against rights), IX (§ 1983 Substantive Due Process Violations), and X (§ 1983 Fourteenth Amendment Due Process Violations).**

"Under the Eleventh Amendment, federal courts lack jurisdiction over suits against nonconsenting states." *Block v. Texas Bd. of Law Examiners*, No. 19-50286, 2020 WL 1149547, at *2 (5th Cir. Mar. 10, 2020). Congress can abrogate this immunity if it (1) "makes its intention to abrogate unmistakably clear in the language of the statute" and (2) "acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment."[5] *Id.* (quoting *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003)).

1. Violations of the ADA Against UTA (Count III)

In Count III, Plaintiff claims that UTA discriminated against her on the basis of her alleged "mental impairment" disability in violation of Title II of the ADA by "denying her

---

pp. 25–26. However, "Texas does not recognize the tort of negligent infliction of emotional distress." *Hirras v. Nat'l R.R. Passenger Corp.*, 44 F.3d 278, 280 n.3 (5th Cir. 1995) (citing *Boyles v. Kerr*, 855 S.W.2d 593 (Tex. 1993)). Plaintiff acknowledges that "this was an error," and asks the Court to allow Count VI "to proceed under the claim of intentional infliction of emotional distress." Pl.'s Brief in Resp. to Defs.' Mot. to Dismiss, p. 25. The Court declines to do so.

[5]*Ex parte Young*, 209 U.S. 123 (1908) established a separate exception to state sovereign immunity under the Eleventh Amendment that is at issue when a suit challenges the constitutionality of a state official's action. In *Edelman v. Jordan*, 415 U.S. 651, 664 (1974), the Supreme Court limited the *Ex parte Young* doctrine by holding that sovereign immunity protects state officials sued in their official capacity when the relief sought is retroactive rather than prospective. "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002). Here, although Plaintiff asks the Court for injunctive relief, she alleges no ongoing violations of federal law and seeks only retroactive relief for allegations of prior misconduct. Accordingly, the *Ex parte Young* exception does not abrogate sovereign immunity for the Individual Defendants in their official capacities.

full access to equal education and other services, including the enjoyment of benefits of a service, program or activity conducted by [UTA]." Pl.'s 2nd Am. Compl., pp. 19-20. In the context of ADA violations, the first prong of the Eleventh Amendment immunity analysis is straight forward: "Congress expressly declared the states 'shall not be immune' from suit for a violation of the ADA." *Id.* (quoting 42 U.S.C. § 12202). However, "[t]he second [prong]—whether Congress's purported abrogation was a valid exercise of its § 5 power—is more complicated." *Id.*

"Section 5 legislation that targets facially constitutional conduct is valid only if it demonstrates 'a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Id.* (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)).[6] In *United States v. Georgia*, 546 U.S. 151, 159 (2006), "the [Supreme] Court established a three-part test for determining whether Title II validly abrogates states' sovereign immunity." *Block*, 2020 WL 1149547, at *2. A court must determine, on a "claim-by-claim basis":

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

---

[6]The Court notes that the Fifth Circuit's holding in *Reickenbacker v. Foster* determined "that Title II of the ADA, as a whole," was not a valid abrogation of state sovereign immunity. 274 F.3d 974, 983 (5th Cir. 2001). However, the precedential value of *Reickenbacker* is unclear in light of subsequent caselaw. *Block*, 2020 WL 1149547, at *2 (The 5th Circuit never decided "whether *Reickenbacker's* holding remains valid in cases beyond that specific purview."); *see also Pace v. Bogalusa City School Board*, 403 F.3d 272, 277 n.14 (5th Cir. 2005) (en banc).

9

*Georgia*, 546 U.S. at 159. "Under *Georgia*, only if a plaintiff has alleged conduct that violates Title II and does not violate the Fourteenth Amendment should a court determine whether Title II is valid § 5 legislation as to that class of conduct." *Block*, 2020 WL 1149547, at *2 n.11. "If a plaintiff alleges no conduct that violates Title II, the inquiry ends." *Id*.

"To establish a prima facie case of discrimination under the ADA, [Plaintiff] must show (1) [s]he is a "qualified individual" under the ADA; (2) [s]he was excluded from participation in, or denied the benefits of, services, programs, or activities for which [UTA] is responsible; and (3) the exclusion was by reason of disability." *Id.* at *3 (citing *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). "Title II requires public entities to make "reasonable modifications in policies, practices, or procedures" for disabled individuals, unless the entity can show that a modification would "fundamentally alter the nature" of the service or program it offers. *Id.* (citing 28 C.F.R. § 35.130(b)(1)(7)(i); *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454–55 & nn. 11–12 (5th Cir. 2005)). "A public entity's failure to make a reasonable modification [(i.e., failure to accommodate)] may satisfy the second and third prongs of the prima facie case." *Id.* (quoting *Windham v. Harris Cty., Texas*, 875 F.3d 229, 235 (5th Cir. 2017)).

When asserting a claim under the theory of failure to accommodate, the plaintiff bears the burden of showing that she requested a modification and that the requested modification was reasonable. *Id.* (quoting *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996). "A critical component of a Title II claim for failure to accommodate . . . is proof that the disability and its consequential limitations were known by the [entity

providing public services].” *Windham*, 875 F.3d at 236–37 (citing *Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015) (quotations omitted). "Mere knowledge of the disability is not enough; the service provider must also have understood the limitations [the plaintiff] experienced . . . as a result of that disability." *Id*. (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (quotations omitted). "Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances." *Id*. "The ADA does not require clairvoyance." *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995). To the contrary, a plaintiff must "specifically identify the disability and resulting limitations [and] request an accommodation in direct and specific terms." *Windham*, 875 F.3d at 237 (quoting *Taylor*, 93 F.3d at 165; *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001)).

Here, Plaintiff alleges that UTA violated Title II of the ADA by (1) not providing an extension to Plaintiff of the deadline to complete the hours required within the Spring of 2018 semester, and (2) failing to communicate in a manner she could understand. Pl.'s Second Am. Complaint, p. 19. Neither of these allegations satisfy the second or third prong of a prima facie ADA discrimination violation, which means Plaintiff's claim, if it is to survive, must satisfy the third prong under a theory of "failure to accommodate." *See Block*, 2020 WL 1149547, at *2. However, Plaintiff failed to allege facts demonstrating that she "specifically identif[ied her] disability and resulting limitations [and] request[ed]

an accommodation in direct and specific terms."[7] *Windham*, 875 F.3d at 237. To the contrary, Plaintiff acknowledges that she did not fill out a formal reasonable accommodation request form and submit it to UTA, and instead relies on vague and conclusory assertions that UTA was "aware of the disability" and that "she disclosed it to them on many occasions." Pl.'s Brief in Resp. to Defs.' Mot. to Dismiss, p. 23. Plaintiff fails to show that she clearly disclosed her alleged mental impairment disability and its consequential limitations, that she directly requested a specific modification to accommodate that disability, or that a requested modification was reasonable. Moreover, although Plaintiff acknowledges that UTA offered her the option to withdraw from the course and rollover any hours to another school session, she fails to show that this option was offered as an accommodation to her alleged mental impairment disability or that it was unreasonable. *Id*. Accordingly, Plaintiff fails to allege a prima facie case of discrimination under Title II of the ADA.[8]

Because Plaintiff has not alleged conduct that violates Title II, the Court **GRANTS** Defendants' Motion to Reconsider, and Count III is **DISMISSED with prejudice** as barred by Eleventh Amendment immunity.

---

[7] Plaintiff also failed to allege that "the disability, resulting limitation, and necessary reasonable accommodation" were "open, obvious, and apparent" to UTA and or its employees. *See Windham*, 875 F.3d at 237.

[8] Because the facts of this case do not require the analysis to proceed beyond the first step of the *Georgia* test, the Court need not decide whether the accommodation obligation imposed by Title II of the ADA, as it relates to non-fundamental rights, exceeds that imposed by the Constitution and is therefore not a valid abrogation of state sovereign immunity. *Block*, 2020 WL 1149547, at *2 n.11. Moreover, the Court notes that "the Supreme Court has never before recognized access to public education[] or freedom from disability discrimination in education[] to be fundamental rights, [and the Fifth Circuit has never clarified] whether the holding in *Lane* extends to disability discrimination in access to public education." *Pace*, 403 F.3d at 287.

2. Section 1983 Claims Against the Individual Defendants in their Official Capacities (Counts VII, IX, and X)

Congress did not make its intention to abrogate states' Eleventh Amendment immunity "unmistakably clear" in the language of 42 U.S.C. § 1983. Accordingly, it is well established "that § 1983 does not override a state's Eleventh Amendment immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63 (1989) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). It is similarly well established that a suit against individuals in their official capacities is treated as a suit against a state entity. *Id.* at 71; *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.").

Because the Eleventh Amendment bars § 1983 claims against state officials sued for damages in their official capacities, the Court **GRANTS** Defendants' Motion to Reconsider, and Counts VII, IX, and X are **DISMISSED with prejudice**.

3. Conspiracy Against Rights Claim Against the Individual Defendants in their Official Capacities (Count VIII)

Plaintiff's Original Complaint alleged her conspiracy claim under 18 U.S.C. § 241, but her Second Amended Complaint does not assert a statutory basis. If Plaintiff brings

this claim under § 241, it should be dismissed because § 241 "does not provide a basis for civil liability." *Gill v. State of Texas*, 153 F. App'x 261, 262 (5th Cir. 2005) (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960); *Ali v. Shabazz*, 8 F.3d 22 (5th Cir. 1993) (unpublished)). If Plaintiff brings this claim under 42 U.S.C. § 1985(3), this claim should be dismissed because Congress has not abrogated state Eleventh Amendment immunity for claims arising under § 1985. *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). Regardless, the Court lacks the requisite power to adjudicate this claim. *See* FED. R. CIV. P. 12(b)(1).

Accordingly, the Court **GRANTS** Defendants' Motion to Reconsider, and Count VIII is **DISMISSED with prejudice**.

### C. Sovereign Immunity Deprives This Court of Subject Matter Jurisdiction as to Count XII.

"Sovereign immunity, unless waived, protects the State from lawsuits for damages." *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001); *see also* TEX. GOV'T CODE ANN. § 2260.005; TEX. CIV. PRAC. & REM. CODE §§ 107.001–.005. "Sovereign immunity encompasses two principles: immunity from suit and immunity from liability." *Id.* (citing *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)).

> Immunity from suit bars a suit against the State unless the Legislature expressly gives consent. Immunity from liability protects the State from judgments even if the Legislature has expressly given consent to sue. A party may establish consent by referencing a legislative statute or a resolution granting express legislative permission. Legislative consent to sue the State must be expressed in clear and unambiguous language.

*Id.* (citations and quotations omitted). "[T]he State does not waive immunity from suit simply by contracting with a private person. Legislative consent to sue is still necessary."

14

*Id.* (citations omitted). In short, "there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature." *Estate of Hernandez v. United States*, No. 3:12-CV-04859-M, 2013 WL 3579487, at *3 (N.D. Tex. July 15, 2013) (quoting *Little-Tex.*, 39 S.W.3d at 594). When it enacted Section 2260.005 of the Texas Government Code, the Texas legislature "established [the] administrative process to which plaintiffs must submit their claims before seeking the Legislature's consent to sue the State for breach of contract." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 469 (5th Cir. 2004) (citing TEX. GOV'T CODE ANN. § 2260.005).

In Count XII, Plaintiff alleges a breach of contract claim against UTA, alleging that UTA did not "compl[y] with the terms and conditions of its contract [for educational services] . . . by discriminating and retaliating against [Plaintiff], failing to abide by the Counsel of Social Work Education [] Accreditation Standards, failing to abide by the National Association of Social Work [] Code of Ethics, [] failing to abide by its own policies and procedures in HOP, and failing to abide by the University of Texas Regents' Rules and Regulations." Pl.'s 2nd Am. Compl., p. 34. Plaintiff fails to allege that she exhausted the administrative process under § 2260.005. *Id*. at 34–35. Indeed, Plaintiff fails to reference any legislative statute or resolution granting express legislative permission to sue for breach of contract. *Id*. at 34–35. Moreover, Plaintiff confuses the concepts of immunity from liability and immunity from suit, and argues that UTA, by

15

entering into a contract, waived its sovereign immunity from suit.[9] Pl.'s Brief in Resp. to Defs.' Mot. to Dismiss, p. 25. The Texas Supreme Court and the Fifth Circuit specifically "reject[] [such] waiver-by-conduct argument[s] in light of the Legislature's enactment of [the § 2260.005] administrative process for disposing of contract claims against the State." *Martin K. Eby Const. Co.*, 369 F.3d at 469 (citing *Little-Tex*, 39 S.W.3d at 597).

Because UTA is entitled to sovereign immunity from suit for breach of contract, the Court **GRANTS** Defendants' motion to reconsider, and Count XII is **DISMISSED with prejudice**.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Reconsideration (ECF No. 40) is **GRANTED**, Defendants' Motion to Dismiss (ECF No. 32) is **GRANTED** in part and **DENIED** in part, and Counts III, VI, VII, VIII, IX, X, XI, XII and XIII are **DISMISSED with prejudice.**

**SO ORDERED** on this **27th day** of **March, 2020.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

[9]Plaintiff's confusion is highlighted by the fact that she misquotes *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006) as follows: "[I]n the contract context, a governmental entity waives immunity from liability by entering into a contract, because it—bind[s] itself like any other party to the terms of the agreement." Pl.'s Brief in Resp. Defs.' Mot. to Dismiss, p. 25. The full, unedited quote from *Tooke* reads as follows: "By entering into a contract, a governmental entity necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement, *but it does not waive immunity from suit*." *Tooke*, 197 S.W.3d at 332 (emphasis added).