# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| **JENIFER LYNE KNIGHTON,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:18-cv-00792-P-BP |
| § | |
| **UNIVERSITY OF TEXAS AT** § | |
| **ARLINGTON,** *et al.*, § | |
| § | |
| Defendants. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion for Summary Judgment (ECF No. 88), Brief in Support (ECF No. 89), and Appendix in Support (ECF No. 90) filed on February 9, 2021 by Defendants University of Texas at Arlington ("UTA"), Dawnetta Smith, Debra Woody, Eddie Freeman, Jean Hood, Vistasp Karbhari, and Shelby Boseman (collectively the "Defendants"); the Response and Objection (ECF No. 93) and Brief in Support (ECF No. 94) filed by Plaintiff Jenifer Lyne Knighton ("Knighton") on March 2, 2021; and the Defendants' Reply (ECF No. 95) filed on March 9, 2021. Although the Motion and Reply were filed on behalf of Defendants, Defendant UTA is the only remaining defendant, and the Brief in Support of the Motion refers solely to UTA as the moving party. *See* ECF No. 89 at 24.

After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **GRANT** the Motion for Summary Judgment (ECF No. 88).

## I. FACTUAL BACKGROUND

In this discrimination case, Knighton sues UTA alleging that it violated Title VI of the Civil Rights Act of 1964 ("Title VI") and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"). ECF No. 31. Knighton was a student in UTA's Master of Social Work program and was in the process of completing her required field education internship at the Wellspring Family and Community Institute ("Wellspring"). ECF No. 89 at 6. Knighton reported to UTA that David Jones ("Jones"), the owner of Wellspring, demonstrated "inappropriate, intimidating, and controlling behaviors." ECF No. 31 at 8. Knighton also reported that Jones charged her and other students money in exchange for Wellspring staff members signing off on the students' field placement hours. *Id.* at 9.

UTA removed the students, including Knighton, from their placement at Wellspring and investigated Knighton's complaint. ECF No. 89 at 9. Knighton viewed this removal as a disciplinary action and felt that she was wrongfully discharged. ECF No. 31 at 12. UTA contends that Knighton wanted to leave Wellspring, and it worked with Knighton to find another placement so that she could complete her field hours. ECF No. 89 at 9. When these attempts were unsuccessful, UTA gave Knighton special permission to withdraw from the course. *Id.* at 9-10. However, Knighton was unhappy because she wanted to receive an "incomplete" grade for the course. *Id.* Knighton viewed this action by UTA as a punishment. ECF No. 31 at 12-13.

As part of its investigation, UTA spoke to Jones, who complained about Knighton's performance at Wellspring. ECF No. 89 at 9-10. On March 2, 2018, Knighton lodged another complaint with UTA concerning the way it handled the investigation into her complaint. *Id.* at 11. UTA's investigation did not reveal any violations of Title IX, Equal Opportunity Services, or university policies by any of its employees. *Id.* at 11. Ultimately, Knighton decided to withdraw

from the course, and UTA refunded her tuition for the class. *Id.* at 9. Knighton did not return to UTA. ECF No. 31 at 16.

Knighton filed suit on September 24, 2018, against UTA, Dawnetta Smith, Debra Woody, Eddie Freeman, Jean Hood, Vistasp Karbhari, and Shelby Boseman. ECF No. 1. Senior United States District Judge Terry R. Means ordered Knighton to file an amended complaint in accordance with Federal Civil Procedure Rule 8(a). ECF No. 30. On January 14, 2019, Knighton filed her Amended Complaint asserting various causes of action against UTA and several of its employees in their individual and official capacities. She sued UTA for: (1) Title IX gender discrimination; (2) Title IX retaliation; (3) violation of the Americans with Disabilities Act of 1990 ("ADA"); (4) failure to respond and/or accommodate in violation of Title VI; and (5) race discrimination in violation of Title VI. She sued the individual defendants for (6) negligent infliction of emotional distress; (7) equal protection violations under 42 U.S.C. § 1983; (8) conspiracy against rights; (9) substantive due process violations under § 1983; and (10) Fourteenth Amendment due process violations under § 1983. Additionally, she claimed (11) defamation per se against Dawnetta Smith and Eddie Freeman; (12) breach of contract against UTA; and (13) interference with a prospective business relationship against the individual defendants. ECF No 31. On October 9, 2019, Judge Means transferred the case to Judge Pittman. On March 27, 2020 Judge Pittman granted in part the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 41), leaving only Knighton's claims against UTA for gender discrimination and retaliation under Title IX and failure to respond and/or accommodate and race discrimination under Title VI. ECF No. 49.

UTA now moves for summary judgment on each of Knighton's remaining claims, asserting that: (1) there is no evidence that UTA intentionally discriminated against Knighton on the basis of sex or race; (2) Knighton does not allege facts that that amount to discrimination or harassment

3

under Title VI or Title IX; (3) even if Knighton's claims do not fail as a matter of law, there is no genuine issue of material fact that UTA responded to and investigated her complaints in a manner that was not deliberately indifferent as a matter of law; (4) Knighton's retaliation claim is unfounded; and (5) Knighton's claims for injunctive relief are moot and claims for punitive damages are unavailable under Title VI and Title IX. ECF No. 89 at 14.

## II. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248; *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

When a movant carries its initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Celotex*, 477 U.S. at 322-24; *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's

burden," *Douglass*, 79 F.3d at 1429, as "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, "the [Court's] function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The movant's motion for summary judgment will be granted only if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56(e)(2).

### III.    ANALYSIS

#### A.  Title IX and Title VI claims

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be

excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). Title VI provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any program or activity receiving financial assistance." 42 U.S.C. § 2000d *et seq*.

The intent of Congress in passing Title IX and Title VI was to prohibit discriminatory practices based on sex or race by federally-funded institutions. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998). Title IX was modeled after Title VI, and the "two statutes operate in the same manner." *Id.* (citing *Guardians Assn. v. Civil Serv. Comm'n of New York City*, 463 U.S. 582, 599 (1983)); *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020). Title IX and Title VI provide for enforcement through an implied private right of action for injunctive relief or monetary damages. *Cannon v. Univ. of Chi.*, 441 U.S. 677, 694-96 (1979).

> 1. *Knighton has not presented evidence to show a genuine issue of material fact that UTA intentionally discriminated against her under either Title IX or Title VI.*

Knighton argues that UTA discriminated against her because of her sex and race "when it failed to respond appropriately to her complaint of sexual harassment and gender-discrimination." ECF No. 31 at 16, 23. Additionally, she claims that UTA discriminated against her on the basis of race when it failed to respond to her complaints of extortion. *Id.* at 21. UTA responds that Knighton fails to demonstrate a genuine issue of material fact because she presented only her conclusory arguments that she was discriminated against and no summary judgment evidence that the discrimination was intentional. ECF No. 89 at 9. In her response, Knighton asserts that she UTA "provided this Court with false and misleading information," and "discovery has not been properly conducted." ECF No. 94 at 1, 3. UTA replies that Knighton has not identified any evidence in the record that supports her claims. ECF No. 95 at 1.

6

Under Title IX, a plaintiff must establish that the alleged discrimination against her was intentional. *Walter v. Birdville Indep. Sch. Dist.*, No. 4:18-cv-301-A, 2018 WL 3974714, at *2 (N.D. Tex. Aug. 20, 2018) (citing *Fort v. Dallas Indep. Sch. Dist.*, 82 F.3d 414, 1996 WL 167072, at *3 (5th Cir. 1996)). A plaintiff can establish intentional discrimination by presenting evidence of an official policy of discrimination or by showing an institution was deliberately indifferent to acts of discrimination of which the institution had actual knowledge. *Gebser*, 524 U.S. 290; *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 642 (1999); *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 182 (2005). "To violate Title IX, a funding recipient need not have intended to violate Title IX, but need only have intended to treat women differently." *Poloceno v. Dallas Indep. Sch. Dist.*, No. 3:18-cv-01284-E, 2019 WL 7305216, at *2 (N.D. Tex. Dec. 30, 2019), *aff'd*, 826 F. App'x 359 (5th Cir. 2020) (citing *Pederson v. La. State Univ.*, 213 F.3d 858, 881 (5th Cir. 2000)). Section 601 of Title VI prohibits only intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) (citing *Alexander v. Choate*, 469 U.S. 287, 293 (1985)).

Knighton has not offered summary judgment evidence to prove that UTA intentionally treated her differently during the investigation of her sex discrimination and harassment claims. ECF No. 31 at 7-16. She alleged discrimination based on her gender, but did not offer evidence that any unlawful bias affected the school's response. *Id.* at 16-17. Such evidence is necessary to present an issue for trial on this point. *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 211 (5th Cir. 2019). Moreover, Knighton never alleged or offered competent summary judgment evidence to show that other male students who made similar complaints were treated better or differently than she was because of their sex. *See* ECF No. 31 at 16-17. The Fifth Circuit has held that evidence of similarly situated comparators who were treated more favorably can be sufficient evidence, for

summary judgment purposes. *Klocke*, 938 F.3d 213 (citing *Keelan v. Majesco Software*, Inc., 407 F.3d 332, 345 (5th Cir. 2005)). Thus, Knighton's sex discrimination claim fails as a matter of law.

Likewise, Knighton has not shown a genuine issue of material fact on her claim that UTA intentionally discriminated against because of her race in responding to her complaints of sexual harassment and extortion. Knighton attempts to demonstrate this by alleging that she was the only student accused of misconduct and disciplined by the interruption of internship, and that she was the only white student involved in the internship incident. ECF No. 31 at 22, 24. However, Knighton did not offer competent summary judgment evidence that UTA treated students of a different race from her better or differently in connection with their complaints. *See id.* at 21-25. Knighton only offers her subjective opinions that UTA discriminated against her, and without evidence to support her claims, she failed to present a genuine issue of material fact for trial that UTA intentionally discriminated against her on the basis of her race. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). Thus, Knighton's race discrimination claims fail as a matter of law.

> 2. *Knighton has not presented evidence to create a genuine issue of material fact to establish UTA subjected her to discriminatory harassment.*

Knighton alleges that the harassment she experienced in her internship was "sufficiently severe and pervasive to create hostile education environment." ECF No. 31 at 16. She claims further that UTA "failed to respond appropriately to her complaint of sexual harassment and gender-discrimination." *Id.* Knighton states that UTA's failure to respond amounted to deliberate indifference, and as a result she was subject to continuing discrimination, harassment, and loss of educational opportunity. *Id.* UTA contends that its investigation of Knighton's claims revealed conduct that did not rise to the level of sexual harassment. ECF No 89 at 18. In her response to UTA's summary judgment motion, Knighton asserts that "an investigation never took place." ECF No. 94 at 2. UTA counters that Knighton has not identified any evidence in the record that supports

8

her claims. ECF No. 95 at 1.

To prove discriminatory harassment under Title IX, Knighton must show that (1) there was harassment that was so severe, pervasive, and objectively offensive that it effectively barred her access to an educational opportunity or benefit, and (2) the funding recipient was deliberately indifferent to the harassment. *Sewell*, 974 F.3d at 584. In evaluating cases brought under Title IX, courts also rely on Title VII cases that found harassment if it caused a hostile environment. *Sewell*, 974 F.3d at 584 n.2 (citing *Fennell v. Marion Indep. School Dist.*, 804 F.3d 389, 309 (5th Cir. 2015); *Carder v. Cont'l Airlines Inc.*, 636 F.3d 172, 180 (5th Cir. 2011)); *E.E.O.C v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444. 461 (5th Cir. 2013) (Title VII).

In considering Knighton's hostile environment claim, the Court first must determine if the harassment was so severe, pervasive, and objectively offensive that it effectively barred Knighton's access to an educational opportunity or benefit. The Fifth Circuit uses a totality of the circumstances test to determine whether the acts are objectively severe, pervasive, and offensive. *West v. City of Houston, Texas*, 960 F.3d 736, 742 (5th Cir. 2020). The Court looks at the (1) frequency of the acts, (2) severity, (3) physically threatening or humiliating, or mere offensive utterance, and (4) whether it unreasonably interferes with the learning environment. *Id.*

Knighton alleges that she was subjected to sexual harassment by Jones during her internship. ECF No. 31 at 16. While Knighton's pleadings describe instances of Jones hugging and verbally insulting her, she offered no summary judgment evidence to support her claims. ECF No. 31 at 8. And even if she had, these isolated instances are not enough to establish frequency, severity, or physically threatening or humiliation sufficient to support a hostile environment claim. *West*, 960 F.3d at 742. Knighton claims that Jones intimidated her, but her subjective belief is not sufficient for the Court's review of her claims. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)

9

(conduct must be such that a reasonable person would find it severe or pervasive enough to create an objectively hostile environment). Knighton has not presented summary judgment evidence to show Jones's actions and comments rose to the level of being objectively offensive. ECF No. 31 at 6-16. Further, the evidence presented by UTA demonstrates that Knighton's reaction under the circumstances was unreasonable compared to the responses of her fellow students, and she was the only student placed at Wellspring who did not accept a new placement after UTA removed its students. ECF No. 90 at 101, 183. Finally, UTA has presented evidence that despite Knighton's claims, UTA investigated Knighton's complaints and concluded that they did not rise to the level of sexual harassment under university policies. *Id.* at 156, 176, 178-191. Therefore, under the totality of the circumstances, Knighton has not produced any summary judgment evidence to establish a genuine issue of material fact of whether she was subjected to sexual harassment that was severe, pervasive, and offensive.

Even if Knighton had presented evidence to raise a factual issue on harassment, she still could not recover unless she presented evidence that UTA's response to her complaints of harassment amounted to deliberate indifference. To establish deliberate indifference, Knighton must show that "the [UTA's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Plaintiffs seeking to prove deliberate indifference must meet a high burden; showing mere negligence or unreasonableness is not enough. *Id.* at 649.

Knighton alleged that UTA failed to respond to her complaint, but she has not presented summary judgment evidence that UTA was deliberately indifferent to her complaint. ECF No. 31 at 16. UTA has presented summary judgment evidence that it investigated her complaints, "interviewed witnesses, produced an investigation report, and considered any additional

10

information Knighton wished to provide." ECF No. 89 at 21; ECF No. 90 at 176-91. Knighton failed to offer summary judgment evidence to raise a fact issue on this element. Because Knighton did not offer evidence to show UTA's deliberate indifference to her complaint, UTA is entitled to summary judgment on this point.

> 3. *Knighton has not presented evidence to create a genuine issue of material fact to establish that UTA retaliated against her for filing her complaint.*

Knighton alleged a violation under Title IX that "she suffered a material adverse action by being wrongfully disciplined through an interruption of internship and being discharged from Wellspring after reporting sexual harassment and gender discrimination." ECF No. 31 at 17-18. In its summary judgment motion, UTA argues that there is no evidence that UTA took an adverse action against Knighton. ECF No. 89 at 22. In her response, Knighton merely asserts that UTA has "provided this Court with false and misleading information," and "discovery has not been properly conducted." ECF No. 94 at 1, 3. UTA replied that Knighton has not identified any evidence in the record that supports her claims. ECF No. 95 at 1.

To establish a claim of retaliation a "plaintiff must show that the funding recipient or its representatives took an adverse action against [her] because [she] complained of discrimination." *Sewell*, 974 F.3d 586 (citing *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 157, 170 (5th Cir. 2011)). A prima facie case of retaliation requires (1) that the student engaged in a protected activity, (2) that the student suffered an adverse action, and (3) that there is a causal link between the protected activity and the adverse action. *Z.B. v. Irving Indep. Sch. Dist.*, No. 3:17-cv-2583-B, 2019 WL 2716504, at *4 (N.D. Tex. June 28, 2019), *aff'd sub nom. Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233 (5th Cir. 2020) (citing *Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 911 (S.D. Tex. 2007); *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003)). Summary judgment for UTA is appropriate if Knighton cannot support all three elements. *Id.*

Knighton claims that she was subjected to an adverse action because she was "wrongfully disciplined through an interruption of internship and discharged from Wellspring after reporting sexual harassment and gender discrimination." ECF No. 31 at 17-18.

However, UTA presented competent summary judgment evidence that it did not discipline Knighton or retaliate against her. The evidence shows that UTA tried to assist Knighton in finding a new placement and gave her the option to apply her hours earned to the next semester. ECF No. 90 at 114-138, 182. It showed that UTA never required to complete more than the required number of field placement hours. *Id.* at 69, 88. The evidence proved that UTA did not subject Knighton to the ordinary disciplinary procedure associated with an Interruption of Field Placement form filed by Jones. *Id.* at 135, 182, 184. And finally, the evidence showed that Knighton did not want to return to Wellspring. *Id.* at 182, 184. Knighton offered no summary judgment evidence to contradict what UTA proved, nor did she offer any evidence to demonstrate a causal link between the alleged adverse actions and the protected activity. Because Knighton offered no summary judgment evidence to support all three elements of her Title IX retaliation claim, summary judgment for UTA is appropriate on this point.

**B.     UTA is entitled to summary judgment on Knighton's claims for injunctive relief and punitive damages.**

Knighton requests the Court grant various forms of injunctive relief including ordering UTA to: (1) abide by all state and federal laws; (2) release Plaintiff's academic transcripts and a letter of good standing; (3) hire non-affiliated third party for investigating its Title IX and discrimination complaints for a minimum of 5 years; (4) review its Title IX and discrimination policies and implement and follow new policies for students enrolled in UTA's School of Social Work; (5) write and publish through UTA the impacts of sexual harassment, retaliation, victim blaming and how to recognize signs of such conduct; (6) hire a non-affiliated licensed third party

to educate its faculty on the harm of victim blaming after a student reports sexual harassment and gender discrimination; (7) properly train and educate its faculty on mental health and the dangers and warnings of suicidal thoughts; (8) have required monthly forums for faculty related to sexual harassment of students, including practicum students; and (9) pay all cost of litigation in this case. ECF No. 31 at 37-38. As acknowledged by Knighton, she is no longer enrolled at the UTA. *Id.* at 18. Given that Knighton is no longer enrolled, her request for injunctive relief is moot. *See Pederson*, 213 F.3d 874, 877.

Moreover, because she is not entitled to relief on her substantive claims against UTA, Knighton's claims for injunctive relief are not well-taken. A request for injunctive relief is not a standalone claim, but instead depends on an underlying cause of action. *See Crook v. Galaviz*, 616 F. App'x 747, 753 (5th Cir. 2015); *Cook v. Wells Fargo Bank, N.A.*, No. 3:10-CV-592-D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010).

Further, Knighton cannot recover punitive damages from UTA under Title VI and IX. *Barnes v. Gorman*, 536 U.S. 181 (2002) (punitive damages not available under Title VI); *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 972 F. Supp. 2d 878, 889 (M.D. La. 2013) (barring punitive damages under Title IX). Therefore, UTA is entitled to summary judgment on Knighton's claim for punitive damages.

## IV. CONCLUSION

Knighton has failed to present summary judgment evidence to support her claims against UTA under Title VI and Title IX, and she is not entitled to recover the injunctive relief and punitive damages that she seeks. For these reasons, the undersigned **RECOMMENDS** that Judge Pittman **GRANT** the Defendants' Motion for Summary Judgment (ECF No. 88).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on May 24, 2021.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE